THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM DAMBROSIO, Respondent, *v.* J. F. McNEILL, Superintendent of the Institution for Male Defective Delinquents, Napanoch, N. Y., Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant.

Hill, P. J., Bliss, Heffernan and Foster, JJ., concur; Schenck, J., dissents, in an opinion.

SCHENCK, J. (dissenting). Relator was sentenced to Sing Sing Prison in 1936 for a three and one-half to seven-year term. In June, 1937, he was transferred to the Institution for Male Defective Delinquents at Napanoch, pursuant to section 439 of the Correction Law. Prior to the date of transfer relator had on two occasions been incarcerated in that institution for crimes committed in 1927 and 1931. He now comes before the Supreme Court upon a writ of habeas corpus asking to be discharged from Napanoch and committed instead to Sing Sing or another State prison. The lower court granted the relief requested after a hearing and has made an order transferring relator back to Sing Sing, from which order this appeal is taken.

The State contends (1) that the lower court had no power to transfer an inmate from one State institution to another, this being merely an administrative function; (2) that habeas corpus is not the proper remedy because there is no claim of illegal detention nor any attempt to have relator discharged from the State's custody, and (3) that the lower court had no authority to conduct a hearing into relator's mentality. The State, however, apparently does not strenuously contend that the lower court's determination was not supported by the evidence introduced at the hearing. Evidence introduced on behalf of relator in the form of the testimony of a concededly qualified psychologist was to the effect that relator's mental condition was of sufficient standard as not to require confinement in an institution for mental defectives. A psychologist testified, on behalf of the State, that relator would be " better off " in Napanoch but conceded that relator's " I. Q." was steadily improving, and further, that there was considerable question as to the necessity of keeping him in Napanoch.

I believe that the evidence was sufficient to sustain the lower court's finding, especially in view of the court's opportunity to observe and question the relator. While the law in point is not well settled, the legal objections raised by the State as to the procedure taken appear to be without merit and I am convinced that the order should be affirmed.

It is contended by the State that section 446 of the Correction Law relative to habeas corpus should be read in connection with section 441 and should apply only to prisoners seeking discharge after expiration of their terms of commitment. I find no authority to sustain this position. It is true that prisoners may only be discharged from Napanoch by the superintendent upon expiration of their terms. However, it does not, or at least should not, follow that they have no redress against wrongful detention in an institution for mental cases during the period of their prison terms. Seemingly, no other remedy would be applicable in this case. A review under article 78 of the Civil Practice Act would be of no avail for the reason that relator's condition, especially his intelligence quotient, has materially improved since his commitment. If, therefore, he was entitled to removal from an insti-

tution maintained solely for mental defectives, the proceeding here taken was entirely proper.

The argument that the lower court did not have authority to determine the place of relator's incarceration, while possibly sound under ordinary conditions, lacks merit under the facts here presented. This is a question not of whether relator should be in one prison or another, but whether he should be in a mental institution or a State prison. If the court, upon the hearing and upon the weight of evidence in the form of medical testimony, determined relator was not in such mental condition as to require confinement in Nappanoch, the only course under law and logic was to remand him to a State prison. To say that the lower court had no authority to conduct such a hearing would be to deprive the court of a basis for proper determination.

While upon its face this ruling might appear to violate some of the principles of a habeas corpus proceeding as set forth in numerous cases cited by the State, the fact remains that if a man is not a mental defective (and the hearing herein satisfies me that relator is not), some remedy must be permitted him to seek to obtain a transfer to a proper penal institution. For obvious reasons, the writ here did not seek the full discharge of relator. It did, however, ask for his discharge from Napanoch even though it was conceded that he would immediately have to be reincarcerated in a State prison.

The order should be affirmed.